COMMERCIAL NATIONAL BANK OF OMAHA ET AL., APPELLEES, v. JOHN H. GIBSON ET AL., APPELLANTS.

FILED OCTOBER 4, 1893. No. 4632.

1. **Pleading:** AMENDMENTS: DISCRETION OF TRIAL COURT. After the issues have been fully made up it rests within the sound judicial discretion of the trial judge either to permit amendments of the pleadings in furtherance of justice, and on such terms as may be proper, or absolutely to refuse the right of amendment.

2. **Corporations:** UNPAID SUBSCRIPTION: LIABILITY OF STOCKHOLDERS. Under section 4, article 11, of the constitution of Nebraska, the original subscribers for stock of a corporation or joint stock association are liable to the creditors of such corporation or association for the amount unpaid on said subscription, and such liability shall follow the stock without releasing such subscriber.

3. ———: ———: ———: PROCEDURE. The constitutional requirements, that the exact amount justly due shall be first ascertained, and that the corporate property shall have been exhausted before enforcing individual liability for unpaid subscription for stock, are sufficiently met by the rendition of a

judgment and the return of an execution *nulla bona* against the corporation whose stockholders are sought to be held liable to its creditors.

APPEAL from the district court of Douglas county. Heard below before WAKELEY, J.

The facts are stated in the opinion.

*Lake, Hamilton & Maxwell,* for appellant Layton:

From the facts as disclosed by the evidence there is no privity between Layton and the Omaha Varnish Company by reason of his purchase from Bodine of his shares of stock, and he would not be liable to it in an action for unpaid subscriptions, and for the same reason he is not liable at the suit of creditors of the insolvent corporation against its stockholders to enforce payment of their claims. (Cook, Stock and Stockholders, secs. 258–266; *Marlborough Mfg. Co. v. Smith,* 2 Conn., 579; *Northrop v. Newtown & Bridgeport Turnpike Co.,* 3 Id., 544; *Oxford Turnpike Co. v. Bunnell,* 6 Id., 552; *Dane v. Young,* 61 Me., 167; *Adderly v. Storm,* 6 Hill [N. Y.], 624; *Rosevelt v. Brown,* 11 N. Y., 152.) The claim of Edward Ainscow against the Omaha Varnish Company cannot be enforced in this action, not having been reduced to judgment and the exact amount justly due first ascertained. (*Weil v. Lankins,* 3 Neb., 384; *Crowell v. Horacek,* 12 Id., 622; *Keene v. Sallenbach,* 15 Id., 202; *Kennard v. Hollenback,* 17 Id., 365; *Sayre v. Thompson,* 18 Id., 33.) To authorize the filing of a creditor's bill or the recovery by a creditor of the corporation of the amount of his claim against the subscribers and stockholders, it is not only necessary that the claim should be first reduced to judgment, but that an execution thereon should be returned not satisfied, or it should, at least, be alleged and proved that the corporation had no real or personal estate liable to levy and sale on execution whereby the judgment could be satisfied. (*Sayre v. Thompson,* 18 Neb., 33.)

*A. S. Churchill,* for appellant French:

The company had no authority to interfere with the transferability of the shares. (*Upton v. Tribelcock,* 91 U. S., 45; Angell & Ames, Corporations, secs. 558, 566; *Webster v. Upton,* 91 U. S., 70; Thompson, Liabilities of Stockholders, secs. 1, 4, 210; *Billings v. Robinson,* 94 N. Y., 415; *Bank of Attica v. Manufacturers & Traders Bank,* 20 Id., 501; *Discoll v. West,* 59 Id., 96; *People v. Ellmore,* 35 Cal., 653; *Chouteau Spring Co. v. Harris,* 20 Mo., 383.)

*Gregory, Day & Day,* for appellee Ainscow:

Ainscow commenced no suit by creditor's bill, but was made a party defendant in the subject-matter by suit, properly brought by persons having obtained judgment and a right to bring a creditor's bill, and the right to consider and award judgment for the amount due rests upon that general principle of equity, that where a court once acquired jurisdiction of the subject-matter it acquired it for all purposes whatsoever, and has the power in matters thus acquired of making just such order and entering such judgment as a court of law would have done if it had first acquired jurisdiction. (*Swift v. Dewey,* 20 Neb., 107; *Buchanan v. Griggs,* Id., 165; *Whiting v. Root,* 52 Ia., 292; *McMurray v. Van Gilder,* 56 Id., 605.) The appellant French is liable in that he did not transfer the stock till long after the corporation ceased to do business and was winding up its affairs and in a state of dissolution, with every evidence of insolvency, and with the full knowledge of which he was charged as an officer of the corporation, and was without power to make a legal transfer. (Morawetz, Private Corporations, secs. 166, 168, 310.)

*Montgomery, Charlton & Hall,* for appellees:

The original subscribers are liable for their unpaid sub-

scription.   Payment may be enforced, not only as against the holder of the stock but also the original subscribers, after the corporate property shall have been exhausted. (Constitution, art. 11, sec. 4; 2 Waterman, Corporations, sec. 275; *Brown v. Hitchcock*, 36 O. St., 667; *Pittsburgh & C. R. Co. v. Clark*, 29 Pa. St., 146; *Messersmith v. Sharon Savings Bank*, 96 Pa. St., 440; *Hager v. Cleveland*, 36 Md., 476.)   If the stockholders knew of the insolvency at the time of the transfer it would be very strong evidence of fraud, and it would be hard to resist the conclusion that such transfer was made in bad faith.   A transfer made with the purpose of escaping liability, to a person who is incapable of responding in respect of such liability, is void as to creditors and other shareholders. (*Miller v. Great Republic Ins. Co.*, 50 Mo., 57; *Providence Savings Institution v. Jackson Place Skating Rink*, 52 Id., 558; *McClaren v. Franciscus*, 43 Id., 467; *Nathan v. Whitlock*, 9 Paige Ch. [N. Y.], 152; *Marcy v. Clark*, 17 Mass., 334; *Brown v. Hitchcock*, 36 O. St., 667; Thompson, Liability of Stockholders, sec. 215; *Bowden v. Johnson*, 107 U. S., 251; *Sawyer v. Hoag*, 84 U. S., 610.)   The evidence discloses that the Omaha Varnish Company had no property remaining out of which the claims of creditors could be made, and the district court so adjudged.   Execution had issued prior to the commencement of this suit and returned unsatisfied.   This showing is conclusive as to the corporate property having been exhausted. (*Baines v. Babcock*, 27 Pac. Rep. [Cal.], 674; *Hatch v. Dana*, 101 U. S., 205.)

RYAN, C.

On the 31st day of October, 1888, the Commercial National Bank of Omaha and L. C. Gillespie, as plaintiffs, filed in the district court of Douglas county, Nebraska, their petition, in which were made defendants Edward Ainscow and the Omaha Varnish Company, of Omaha, with various other parties whom it alleged were, or had

been, stockholders of the said varnish company. It was alleged in this petition that the articles of incorporation of the Omaha Varnish Company, defendant, were duly adopted, subscribed, and acknowledged on the 20th day of April, 1887; and that it was provided in said articles that said corporation should commence on the 18th day of April, 1887, and terminate one hundred years from that date; that said company commenced doing business soon thereafter, and in the course of its business became indebted to the Commercial National Bank on account of money loaned, and to the plaintiff L. C. Gillespie on account of goods by him sold to said company; that on August 4, 1888, the said plaintiff, the Commercial National Bank, recovered a judgment against said Omaha Varnish Company for the sum of $2,179.72, and that L. C. Gillespie recovered judgment in the sum of $1,882.02 on the same date, which judgments, by their terms, drew interest at ten per cent per annum from May 14, 1888, and that no part of either of said judgments had been paid. The petition further alleged that on the 7th day of August, 1888, executions were duly issued upon said judgments and delivered to the sheriff of said Douglas county, and by him, on the 19th day of October, 1888, were returned unsatisfied for want of goods, chattels, lands, or tenements of the said defendant, the Omaha Varnish Company, whereon to levy, the said sheriff, after diligent search, having been unable to find any property of the said varnish company, and that the Omaha Varnish Company, of Omaha, Nebraska, is insolvent, and has no property out of which the said plaintiffs can make their judgment aforesaid. The petition further alleged that it was provided by the articles of incorporation of the Omaha Varnish Company that the capital stock thereof should be $25,000, divided into shares of $100 each, which should be subscribed and paid for in installments, the first installment to be fifteen per cent, and the subsequent ones as might be required by

order of the board of directors. The petition then in detail recited the subscription for, or acquisition of, stock by transfer of each of the sixteen defendants described as stockholders of, and therefore associated with, the said Omaha Varnish Company as defendants. The prayer of the petition was that each of the defendants then or theretofore holding stock in the Omaha Varnish Company should be held liable for the unpaid eighty-five per cent due upon each of the respective shares of stock by them held, and that such defendants as stockholders be required to pay Edward Ainscow (a co-defendant, who, by reason of having a claim against said company and refusing to join in said petition, was made a defendant) the amount which was due him from said varnish company, and that judgment be rendered accordingly. Several of the defendants made default, and judgment was thereupon rendered against them as prayed.

On the 13th day of December, 1888, Egbert E. French, one of the defendants, answered denying any knowledge as to whether there had been judgments rendered against the Omaha Varnish Company in favor of the plaintiffs, or that execution had issued on such alleged judgments. The answer of French admitted that he was at one time a stockholder of the Omaha Varnish Company, but alleged that on October 17, 1887, he had sold and transferred unto William J. Paul all the stock and interest he ever had in said association, since which time he had had no connection or interest therein; that at the time of transferring said stock said corporation was solvent and abundantly able to pay all its debts and liabilities. On the 9th day of January, 1889, C. D. Layton, one of the defendants, answered admitting that there had been a formal transfer to him of stock in the Omaha Varnish Company by one George W. Bodine, but alleged that no registry of said transfer was ever made by said company, and denying that such registry had by him ever been authorized to be made; and that upon

a date, which he unfortunately left blank, he had transferred his certificates of stock to one John H. Rikerd. This defendant also denied that certificates of stock alleged to have been issued to him were so issued. Further answering, this defendant alleged that no part of said pretended indebtedness or liability of said varnish company to said plaintiffs, to said co-defendant Ainscow, or to either of them, had been incurred by said company while this defendant formally held the aforesaid certificates of stock therein as hereinbefore admitted, and this defendant further alleged that at the time of transferring said certificates of stock as aforesaid to said Rikerd, the said Omaha Varnish Company was solvent and abundantly able to pay all its debts and liabilities. The answer closed with a denial of every allegation in the petition not before specifically admitted or modified.

The plaintiffs replied to the answer of defendant Layton by a denial of the several averments thereof. Thereupon the reply alleged that the Omaha Varnish Company never had any notice of the alleged transfer of stock certificates in said corporation by the said defendant Layton to the said John H. Rikerd, and that no such transfer was ever registered by said corporation, and that neither plaintiffs nor any other creditor of said Omaha Varnish Company had any notice of such alleged transfer. The reply admitted that the indebtedness of the Omaha Varnish Company to plaintiffs and to defendant Ainscow had been incurred before the transfer of the stock of Bodine to the defendant Layton, and alleged that said varnish company was then and continued liable for all of it while the defendant Layton was a stockholder in said company. The reply further denied that the Omaha Varnish Company had been solvent or abundantly able to pay all its indebtedness or liabilities during any of the times since defendant Layton had become a stockholder in said corporation, except as such payment might be made by calling upon the

individual stockholders in said varnish company for payment of their unpaid subscriptions.

In reply to the answer of defendant French the plaintiffs denied the transfer alleged in said answer, and averred that if said defendant French entered into any arrangement with the defendant William J. Paul for the transfer of said stock of said company, that no notice that such arrangement had been made for said transfer had been given, and that there had been no transfer of said stock, and that neither plaintiffs nor any other creditor of said Omaha Varnish Company had any notice of any arrangement for or attempted transfer of stock by the said French to said Paul, and that there had been no transfer of said French's certificates of stock upon the books of said corporation, and that no request for such transfer had ever been made by either said French or Paul. This reply closed with the same denial as to the solvency of the varnish company as is found in the reply to the answer of Layton.

These replies were filed in March of 1889.

Edward Ainscow, who by the petition had been alleged to be a holder of a claim against the Omaha Varnish Company, answered, admitting the existence of the indebtedness as charged from the Omaha Varnish Company to him, and alleging that said indebtedness was still due. This defendant further answered as follows: "And this defendant, without relinquishing or waiving any of his rights against the makers of said notes in question, makes such tender and such tender only of the notes in question as will enable the same to be equitably enforced against the defendant the Omaha Varnish Company and its stockholders who have been made defendants." The defendant Ainscow thereupon prayed that his claim might be considered in so far only as it should affect the liability of the defendant the Omaha Varnish Company, and the defendants as stockholders of the same, and that said Ainscow have and

obtain such order and decree for the payment of the same as to the court should seem meet and proper.

The trial of this case was commenced on December 13, 1889, the issues at that time being as above described. On the date last named there was filed in said cause the follow-lowing motion:

"Comes now Egbert E. French, one of the defendants herein, and moves the court for leave to file his amended answer. instanter and cross-bill, which he herewith tenders, and for reasons therefor states, that said amended answer and cross-bill tenders a just and meritorious defense to said action. This defendant for further reason refers to the affidavit filed herewith in support of said motion."

. Most diligent search has failed to disclose in the record the existence of any affidavit accompanying the motion just set out. The defense, or rather the new defense, just proposed to be set up by this answer, consisted, so far as we can discover, in simply setting up such facts in detail as would indicate that the Omaha Varnish Company, at the time French transferred his stock, was solvent. The detailed statement referred to was of the property then owned and of its value. The court refused to give leave to defendant French to file his proposed answer, and on the 14th day of December, the said answer appearing to have been filed, it was by the court ordered to be stricken from the files.

. A similar condition of affairs to that described in relation to French existed in relation' to the amended answer and cross-bill of C. D. Layton, except that there was no filing of the same or order of the court ordering it stricken from the files. The new defense, however, proposed to be set up was of much of the same nature as was tendered in the amended answer of French.

. From the record we cannot determine when the offer to file the amended answer and cross-bill of Layton was made. The only record upon that subject is a stipulation

signed by the several parties to this litigation. It simply recites that "appellant Layton, before the cause came on for hearing in the district court, orally moved for leave to file an amended answer and cross-bill, and presented to the court the identical amended answer and cross-bill herewith attached, and asked leave to file the same, and upon consideration thereof by the court the said court overruled said motion, and said Layton was by the court not permitted to file said pleading, to which said Layton excepted." This stipulation was filed in this court, it being therein agreed that the tender of the answer should be considered as if the same had been regularly shown by the record of the district court. From the nature of this stipulation we are left entirely to infer the date on which the amended petition was presented for filing in the district court; but, as the stipulation recites that it was before the trial, it will be assumed that it was upon the same date as was tendered the amended answer and cross-bill of the defendant French. The action of the court in refusing to allow the proposed amendments will, therefore, be considered as though taken only on one of these tenders made upon the same date that the cause was taken up for trial.

Section 144 of the Code of Civil Procedure provides that: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved." This language clearly vests in the district judge a discretion as to allowing the filing of amendments. Of course this is a judicial discretion, the abuse of which is subject to review. It is none the less necessary, however, to the efficient administration of justice. If it was in the power of a party at any time to tender an amend-

ment to his pleading which the court is bound to permit, there would be no need of dilatory motions or applications for a continuance. Until the trial day, there could not be known how much of truth or falsity there was in the averments of an answer, and such an answer drawn by an adroit attorney could always be made to present a new defense which plaintiff would be unprepared to meet on the eve of trial. The provision allowing amendments is intended to aid in the administration of justice and not to defeat it. We do not mean to be understood to intimate that there was anything in the nature of sharp practice in the presenting of these particular pleadings for filing just as the case was reached for trial. We are discussing simply the general proposition which must govern judicial proceedings. To prevent such abuse of power of filing amendments and procrastination of judicial proceedings it is necessary that to the impartiality and unbiased judgment of the district judge there should be left the exercise of discretion. In the case at bar the proposed amendment presented no defense other than such as had already been tendered by a sufficient answer; there was no showing by the proposed affidavit of any reason for tendering the amendments of French at the late date at which it was tendered, and as to Mr. Layton, no pretense was made of a reason for his delay. Under all these circumstances we think the district judge properly refused to grant leave to file the proposed amended answers and cross-petitions.

It is quite unnecessary to review at length the testimony upon which the decree was rendered. It is sufficient to observe that the findings made in the said decree are fully sustained by the evidence at all points. After recording the default of the defendant, the Omaha Varnish Company, and such of its stockholders as had failed to plead, the decree was for judgment by default against the said parties, after which it proceeded in the following language, which, as it clearly states the extent of the liability of the several parties, and the reason upon which the same is

founded, we shall adopt as the correct version of the facts involved in this case:

"It is therefore by the court considered, adjudged, and decreed as follows: That the plaintiff, the Commercial National Bank of Omaha, Nebraska, recover of and from the said last named defendants the sum of $2,636.27, together with interest thereon at the rate of ten per cent per annum from May 12, 1890; that the plaintiff L. C. Gillispie recover of and from the said last named defendants the sum of $2,280, with interest thereon at the rate of ten per cent per annum from May 12, 1890; and that the defendant Edward Ainscow recover of and from the said defendants the sum of $1,779.43, together with interest thereon at the rate of ten per cent per annum from May 12, 1890; that the said plaintiffs and the said defendant Ainscow recover of and from the said defendants the costs of this suit taxed at $———; that the amounts thus adjudged against the said defendants and in favor of the said plaintiffs and the said defendant Ainscow be, and the same are hereby, decreed payable as adjudged hereinafter.

"That the following named defendants were original subscribers to the capital stock of the Omaha Varnish Company for the following stated number of shares, each of the par value of $100, amounting in the aggregate to the following named sums, and such stock was issued to such defendants in certificates numbered as follows:

| Name of defendant. | No. of certificate. | No. of shares. | Amount. |
|---|---|---|---|
| John H. Gibson | 1, 2, 3, 4 | 8, 8, 8, 9 | $3,300 |
| Eugene Aylesworth | 5, 6, 7, 8 | 8, 8, 8, 8 | 3,200 |
| Charles P. Benjamin | 9, 10, 11, 12 | 8, 8, 8, 8 | 3,200 |
| Fred W. Race | 13, 14 | 10, 10 | 2,000 |
| George W. Bodine | 15, 16, 17 | 9, 8, 8 | 2,500 |
| John F. Kellogg | 18, 19, 20 | 9, 8, 8 | 2,500 |
| Alfred Millard | 21, 22 | 10, 5 | 1,500 |
| Richard C. Patterson | 23, 24 | 5, 5 | 1,000 |
| Ernest C. Keniston | 25, 26 | 5, 5 | 1,000 |
| Egbert E. French | 27, 28, 29, 30 | 9, 8, 8, 8 | 3,300 |
| William H. Elbourne | 31 | 10 | 1,000 |
| C. H. Wilson | 32 | 5 | 500 |

"That the defendant Egbert E. French sold all his stock in October, 1887, to W. J. Paul, whom the evidence shows to be solvent, which said shares of stock are the only shares at any time held by said French in said corporation; but that said defendant French, as one of the original subscribers, is liable for the unpaid portion of such subscription, notwithstanding such transfer.

"That only fifteen per cent of the subscription or par value of the capital stock has been paid up, and each of the said defendants is liable to pay towards satisfaction of the amounts due the plaintiffs and the defendant Edward Ainscow, as above determined, eighty-five per cent of the aggregate amount subscribed by each of said defendants, as above determined, or so much thereof as may be necessary to satisfy and pay the plaintiffs and the defendant Edward Ainscow the aforesaid determined sums due them together with the costs of this action.

"That subsequent to the issuance of said certificates of stock the defendant Alfred Millard purchased of the defendant Eugene Aylesworth the eight shares of his capital stock represented by certificate No. 7; and the defendant Ernest C. Keniston purchased of the defendant Eugene Aylesworth the eight shares of his capital stock represented by certificate No. 8; and the defendant Fannie A. Benjamin purchased of the defendant Charles P. Benjamin the thirty-two shares of his capital stock represented by certificates Nos. 9, 10, and 12; and the defendant Ernest C. Keniston purchased of the defendant Fred W. Race five shares of his capital stock included in certificate No. 13; and the defendant Chesley D. Layton purchased of the defendant George W. Bodine the latter's twenty-five shares of his said capital stock represented by certificates Nos. 15, 16, and 17; and the defendant Robert B. Guild purchased of the defendant John F. Kellogg the nine shares of his capital stock represented by certificate No. 18; and the defendant Ernest C. Keniston purchased of the defendant John F.

Kellogg the sixteen shares of his capital stock represented by certificates Nos. 19 and 20.

"That the said last named defendants who purchased from the other defendants the said shares as stated are, as transferees, jointly and severally liable to the plaintiffs and the defendant-Ainscow, together with their transferers, for eighty-five per cent of the aggregate par value of the shares purchased by each, or so much thereof as may be necessary under the terms of this decree to satisfy and pay the said plaintiffs and the defendant Edward Ainscow the amounts adjudged above due them, with costs.

"That the defendants, within twenty days from the entry of this decree, pay, or cause to be paid, to the said plaintiffs and the said Edward Ainscow the several amounts adjudged due them as above stated, together with the costs of this action, and in default thereof that execution be issued against the defendants John H. Gibson, Charles P. Benjamin, Fannie A. Benjamin, Ernest C. Keniston, Chesley D. Layton, Robert B. Guild, Alfred Millard, Richard C. Patterson, Egbert E. French, and C. H. Wilson, being the defendants who have been served with summons in said action and over whom this court has jurisdiction, and against their property, directed to the sheriff of Douglas county, Nebraska,. and commanding him to collect from the said defendants, or their property, the following sums, or so much thereof *pro rata* as in the aggregate will be sufficient to pay the said amounts due the said plaintiffs and the said defendant Ainscow, together with interest and costs, namely: From John H. Gibson, the sum of $2,905; from Charles P. Benjamin and Fannie A. Benjamin, jointly or severally, the sum of $2,720; from Ernest C. Keniston, the sum of $3,325; from Chesley D. Layton, the sum of $2,125; from Robert B. Guild, the sum of $765; from Alfred Millard, the sum of $1,955; from Richard C. Patterson, the sum of $850; from Egbert E. French, the sum of $2,905; and from C. H. Wilson, the sum of $425.

"In the event that the said sheriff is unable to collect from any of said last named defendants the said amount or amounts for which said defendant or defendants are adjudged liable, the said sheriff is to be directed by said execution and is hereby adjudged to collect from the other of the defendants and against whom the sheriff may be able to enforce such execution, the said amounts due to the plaintiffs and the said Ainscow with interest and costs; provided, however, that the said sheriff shall not collect from any defendant more than the amount which is adjudged against him, as above stated. That whenever any defendant shall have paid the full amount for which he is above decreed liable, such payment shall operate as a full satisfaction of this judgment as against any such defendant."

In argument it is insisted by the appellants that the decree rendered against them was unauthorized, notwithstanding the provisions of section 4, article 11, of the constitution of the state of Nebraska, which is as follows: "In case of claims against corporations and joint stock associations the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers therefor shall be individually liable to the extent of their unpaid subscriptions, and the liability for the unpaid subscriptions shall follow the stock." This language is broad enough to describe all classes made defendants in this action—the original subscribers as well as the subsequent holders of the stock. As to the first, the stockholder is individually liable to the extent of his unpaid subscription; that is to say, by parting with his stock he does not divest his liability to pay whatever remains unpaid upon his subscription. The constitution creates the same liability as against the original holder of stock as would obtain against one who signs any other agreement to pay to a corporation a sum of money. Nothing but his payment will discharge his liability so far as the creditors are concerned. In this case the promise to pay

eighty-five per cent of the stock subscribed for exists as a binding claim against a subscriber for stock until full pay- ment is made.  As between himself and the corporation it may be that in some manner such liability ma · be discharged, but as to the creditors the liability still exists, notwithstanding a transfer of the stock in consideration of the issuing of which such liability was incurred.  As to the other class upon whom is fastened a liability by reason of becoming holders of stock, the language of the constitution is equally plain.  "The liability for the unpaid subscription shall follow the stock," can have no other meaning than that whoever becomes an owner of stock shall be cumulatively liable with the original holder for whatever amount is unpaid thereon.  In the case at bar each of the defendants holding stock of the Omaha Varnish Company was either an original subscriber for such stock, or became such holder by assignment.  His liability seems to be fairly fixed by that part of the constitution just quoted.  The decree of the district court in that respect was therefore right.

It is insisted in argument, however, that the exact amount had not been first ascertained, neither had the corporate property been exhausted when this action was commenced.  We know of no more effective way of ascertaining the amount due than by a judicial determination of that fact.  As to the corporate property having been exhausted there exists no better form of evidence than the return of the sheriff *nulla bona* on an execution issued against a defendant whose property is required to be exhausted precedent to the commencement of other proceedings.  These observations apply with special force to the claims of the Commercial National Bank and L. C. Gillespie respectively.  As to the claim of Ainscow against the Omaha Varnish Company, we think that the judgment by default in this same action sufficiently established the amount due, and that, as the evidence showed that executions had been returned *nulla bona* as to the above two claims sought to be

enforced, it was not essential as to the claim of Ainscow that an execution should have issued and been returned *nulla bona* as a condition precedent to such relief as he might be entitled to. The judgment of the district court is

AFFIRMED.

THE other commissioners concur.