ROBERT W. TILDEN, EXECUTOR OF THE ESTATE OF
CHARLES F. WALLIN, DECEASED, APPELLEE, V.
GUENTHER BECKMANN AND ILSE G. BECKMANN,
HUSBAND AND WIFE, APPELLANTS, IMPLEADED WITH
HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF
LEXINGTON, NEBRASKA, A CORPORATION, APPELLEE.

278 N. W. 2d 581

Filed May 8, 1979. No. 41769.

Harold W. Kauffman and William A. Day, Jr. of

Gross, Welch, Vinardi, Kauffman & Day, for appellants.

Carlton E. Clark of Clark and Clark, for appellee.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

Defendants below, Guenther Beckmann and Ilse G. Beckmann, husband and wife, appeal to this court from a judgment and decree entered by the District Court for Gosper County in an equity action brought by Robert W. Tilden, executor of the estate of Charles F. Wallin, deceased, also known as Fred Wallin, for the purpose of foreclosing a second mortgage, executed by the defendants Beckmann, covering certain real estate owned by them; and securing a certain promissory note in the amount of $20,264 executed by the Beckmanns on July 1, 1971, payable on July 1, 1972, but later extended by agreement of the parties. Home Federal Savings and Loan Association of Lexington, Nebraska, was also made a party defendant to the action, and admittedly held the first mortgage lien upon the premises.

The promissory note executed by the Beckmanns was made payable to Fred Wallin and/or Dale E. Wallin as joint tenants with rights of survivorship, and the mortgage securing the note also listed as the mortgagees therein Fred Wallin and/or Dale E. Wallin as joint tenants with rights of survivorship. Dale E. Wallin is the son of Fred Wallin, deceased.

The petition filed in this action on November 2, 1976, alleges that the plaintiff is the duly appointed and qualified executor of the estate of Charles F. Wallin, deceased; alleges the residence of the defendants and the execution of the note and mortgage previously referred to; declares the balance due on the note and mortgage to be payable at that time be-

cause of default in payments on the mortgage; and prays for a foreclosure of the mortgage and the sale of the real estate covered by said mortgage. Subsequently, on April 29, 1977, the trial court permitted the plaintiff to amend his petition in foreclosure, over the objections of the defendants, to further allege: "That plaintiff holds an assignment of the entire interest of Dale Wallin, joint mortgagee with right of survivorship and has the entire ownership of the note and mortgage contained herein." In their answer, the Beckmanns admit certain allegations of plaintiff's petition; deny all other allegations not admitted; further allege as a defense to the action that on February 27, 1976, the decedent, Charles F. Wallin, signed a written satisfaction of the note sued upon and delivered it to the defendants Beckmann; and prayed that the court dismiss plaintiff's petition.

In a subsequent reply filed to the answer of the defendants, the plaintiff denies the allegations of defendants' answer, and specifically denies the allegation of satisfaction as set out in defendants' answer, alleging that at the time of the execution of the instrument offered as the satisfaction, the deceased, Charles F. Wallin, did not have the mental capacity to execute the alleged satisfaction, and that the purported satisfaction was the result of undue influence exerted upon the mind of the decedent and was not his free and voluntary act.

A pretrial conference was held on April 8, 1977, at which time certain exhibits were marked for trial and foundation waived; and the court, in its order, specifically provided, among other things: "No further pleadings will be permitted except by order of the court after good cause shown" and also: "The issues will be made up by the pleadings and will not be limited by this order. However, the principal issue is expected to be the effect of a release marked as Exhibit No. 3 and the influence or competency involved thereon."

Trial was commenced on April 29, 1977, at which time plaintiff called seven witnesses on his behalf, including the defendants, Guenther and Ilse Beckmann. The plaintiff, Robert W. Tilden, who was executor of the estate of Charles F. Wallin, deceased, testified that decedent's son, Dale Wallin, had filed a contest to the will of the deceased because his father had cut him out of the will; that a settlement was subsequently made of Dale's claim, between the estate and Dale Wallin; and that as part of the settlement Dale Wallin assigned all of his interests in and to the note and mortgage. The court sustained an objection to the testimony as not being the best evidence, and ordered it stricken. Counsel for defendants then pointed out to the court that there was nothing in the petition at that time pleading that Dale Wallin had assigned his interest in the note and mortgage to the estate, and also, that Dale Wallin was not a party to the foreclosure action. Whereupon plaintiff orally moved the court for permission to amend his pleadings to include that allegation. Counsel for defendants objected to the court's granting such permission on the ground that the pleadings and issues were made up and finalized at the time of the pretrial. The court overruled defendants' objection and permitted the amendment of the pleadings to show the assignment referred to. The court then received in evidence, over defendants' objection, exhibits 7, 8, and 9; exhibit 7 being the claim which Dale E. Wallin filed in the estate of his father, Charles F. Wallin; exhibit 8 being a stipulation for settlement of the claim of Dale E. Wallin; and exhibit 9 being a release of the real estate mortgage in question signed by Dale E. Wallin and his wife, Mary Wallin, and also by Robert W. Tilden, executor of the estate of Charles F. Wallin, which release was for the apparent purpose of delivery to the Beckmanns upon the satisfaction of their mortgage indebtedness. Following the production of the evi-

dence from plaintiff's witnesses, plaintiff rested; whereupon the defendants moved the court to dismiss plaintiff's petition on the ground that plaintiff failed to prove a cause of action against the defendants. The court overruled the motion and the defendants then rested. Following arguments of counsel, the court took the matter under consideration. In its judgment and decree entered on August 5, 1977, the court found that the plaintiff had established by clear and convincing evidence: "1. Charles F. Wallin was subject to influence. 2. The opportunity to exercise it existed. 3. There was a disposition to exercise it. 4. The result appears to be the effect of such influence." The court further found that the judgment of foreclosure should be issued; that the defendants Beckmann owed the sum of $16,464.40 with interest, as prayed, from January 1, 1973, subject to the first lien of the Home Federal Savings and Loan Association of Lexington; and that plaintiff's lien is a valid second lien upon the real estate. The court further ordered that in case the judgment is not paid within 20 days from the entry of the judgment, an order should issue to the sheriff of Gosper County commanding him to sell the premises as on execution and apply the proceeds thereof in payment of the amounts so found. Defendants then perfected their appeal to this court. We affirm.

Before proceeding to a discussion of the specific issues involved in this appeal, we first consider the scope of review by this court. We start with the undisputed fact that this is an action in equity to foreclose a real estate mortgage. The rule is well established that actions in equity, on appeal to this court, are triable de novo in conformity with section 25-1925, R. R. S. 1943, subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the

fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478 (1951); Biggerstaff v. Ostrand, 199 Neb. 808, 261 N. W. 2d 750 (1978). Defendants contend, however, that the latter part of the above-stated rule is not applicable to this case for the reason that they did not present any witnesses on their behalf, but rested at the conclusion of plaintiff's case. We do not agree with this premise. The plaintiff presented the testimony of seven witnesses, including the testimony of the two defendants themselves. The testimony of these witnesses was conflicting on certain material issues, particularly with reference to the question of whether the deceased was subject to undue influence in his attempted satisfaction of the mortgage in question. The matter was tried to the court, which had before it all of the evidence, conflicting or otherwise, and which observed the witnesses during their testimony and clearly accepted one version of the facts over another. We reject the argument that the above-stated rule is applicable only where witnesses testify on behalf of the opposing parties.

We first consider defendants' contention that the trial court erred in permitting the plaintiff to amend his petition to include an allegation that Dale Wallin, the son of the deceased, who was a joint payee and mortgagee under the note and mortgage executed by the Beckmanns, had assigned his entire interest in and ownership of the note and mortgage in question. It is clear that if, as alleged, the purported satisfaction of the note given to the Beckmanns during deceased's lifetime was null and void because of undue influence practiced upon him by the Beckmanns, Dale would have become the outright owner of both the note and the mortgage upon the death of his father by virtue of the fact that he was the surviving joint tenant of the property. Sheldon v. Wat-

kins, 188 Neb. 599, 198 N. W. 2d 455 (1972). If, in fact, he settled his proceedings to contest the will of his father by assigning his interest in the note and mortgage to the estate, then it would seem clear that the executor would have the right to bring the foreclosure action in this case; and that Dale Wallin, having divested himself of all interest in the note and mortgage, would not be a necessary party to the proceedings.

Defendants contend, however, that the court erred in permitting the plaintiff to amend his petition to allege the assignment in question, as the provisions of the order of the court in the pretrial hearing precluded such an amendment at the trial itself. We do not agree. As previously stated, the pretrial order provided: "No further pleadings will be permitted except by order of the court after good cause shown" and also: "The issues will be made up by the pleadings and *will not be limited by this order*." (Emphasis supplied.) Even assuming that an amendment of the petition would come within the purview of "no further pleadings," it is clear that the court, after hearing lengthy arguments pro and con at the trial, with regard to the propriety of the amendment in question, did permit the amendment. We think it is clear that even after the issues have been made up, it is within the sound judicial discretion of the trial judge to permit amendments to the pleadings in furtherance of justice. See, § 25-852, R. R. S. 1943; Commercial Natl. Bank of Omaha v. Gibson, 37 Neb. 750, 56 N. W. 616 (1893). We conclude that the trial court acted properly in permitting the amendment of the petition in the manner indicated during the trial itself; that its action was in furtherance of justice; and further, that the reception of exhibits 7, 8, and 9, in support of plaintiff's claim of an assignment by Dale Wallin of his interest in the note and mortgage in question, was proper. While defendants are correct in their argu-

ment that the record does not contain an assignment *in haec verba* by Dale Wallin of his interest in the note and mortgage, this fact is not dispositive; and we believe the facts in this case indicate there was at least an equitable assignment of such interest. The rule is well established that since equity disregards mere form, no particular words or particular form of instrument is necessary to effect an equitable assignment, but any language, however informal, if it shows the intention of the owner of a chose in action to transfer it, so that it will become the property of the transferee, will amount to an equitable assignment. See 6 Am. Jur. 2d, Assignments, § 83, p. 264 et seq. It is also the rule that the intention of the assignor must be to transfer a present interest in the debt or fund or subject matter; if this is clearly expressed, the transaction is an assignment; otherwise not. 6A C. J. S., Assignments, § 53, p. 673.

As previously stated, the court received into evidence exhibit 7 which is a claim filed by Dale E. Wallin in the estate of his father on June 18, 1974. His claim against the estate is based on three separate transactions. The first transaction involves a mortgage and note executed by one Harold Swanson in the principal sum of $24,000 on March 17, 1972. In connection with this item, Dale Wallin alleges that he is the owner of an undivided one-half interest in said note and mortgage; that the note has been paid in full; that the estate and decedent have received and have under their control the principal sum of the note and mortgage in an amount of $30,000; and that the claimant is entitled to $15,000 of that amount. The second item in the claim involves the Beckmann note and mortgage. In his claim Dale alleges that there is due on the mortgage the approximate sum of $19,000; that the note was payable to decedent and the claimant; that decedent and the estate have taken possession of the indebtedness and the se-

curity thereto; that the claimant is entitled to one-half interest therein; and he makes claim against the estate in the amount of $9,500 plus interest. The third item of the claim involves certain shares of stock in corporations which the claimant alleges he owned; and further, that the decedent, Charles F. Wallin, caused the certificates to be cancelled, converted the stock, and caused him loss in the amount of $30,000. The total amount of the claim filed by Dale Wallin against the estate was the sum of $54,000 plus interest.

Exhibit 8, received in evidence by the trial court, is entitled "STIPULATION FOR SETTLEMENT OF CLAIM OF DALE E. WALLIN", dated July 9, 1976. It is signed by Robert W. Tilden, executor, and Dale E. Wallin; and the stipulation was approved and accepted by the associate county judge. The stipulation provides that Dale Wallin shall receive, in settlement of his claim, the sum of $37,500, payable at the time of the execution of the agreement and the approval of the Gosper county court; that Dale Wallin agrees that he will execute any and all necessary documents, releases, and waivers necessary in the administration of the decedent's estate; and that he will claim no further or other interest in and to any other property of the estate of Charles F. Wallin, deceased.

Finally, as previously stated, the court admitted into evidence exhibit 9, which is the release by Dale E. Wallin and his wife of the real estate mortgage involved herein, which was also signed by Robert W. Tilden, executor, allegedly for delivery to the defendants upon their payment of the note.

We believe it is clear from the above exhibits, as well as other testimony in the record, that Dale Wallin intended to and did assign all his interest in the note and mortgage in question to the estate, which paid him $37,500 in settlement of his claim filed in the estate; and that he agreed he would

claim no further interest in the property of the estate and would execute any and all necessary documents and releases. Though no formal assignment was apparently executed by Dale Wallin, it is clear that under the rule set forth above there was at least an equitable assignment of his interest, and we so hold. This being so, it seems clear that, contrary to the contentions of the defendants, Dale Wallin was not the real party in interest at the time the foreclosure suit was instituted, and the executor of the estate, Robert W. Tilden, was the proper party to bring this action.

We now consider the defense set out by the defendants in their answer that on February 27, 1976, the decedent signed a written satisfaction of the note in question and delivered it to the defendants. The "satisfaction" referred to appears in evidence as an exhibit and reads as follows: "February 27, 1976 First National Bank Elwood, Nebraska Gentlemen: You presently have in your possession a note given to the undersigned by Guenther Beckman, [sic] payable to the undersigned and Dale Wallin, in the sum of $20,264.00, dated July 1, 1971. I hereby authorize you to cancel said note and return it to Guenther Beckman [sic] as it has been satisfied. [Signed] *Fred Wallin* Fred Wallin"

According to the testimony of the Beckmanns, the decedent, who was 91 years old at the time of his death on March 31, 1976, and, because of ill health before his death, had been in a nursing home and the hospital, had requested the Beckmanns, whom he had known for about 20 years, to take him into their home to live. According to the testimony of the Beckmanns, they had come to this country from Germany, and had become very friendly with the deceased. The deceased had loaned them money on occasions and had helped them out in other ways; and they, too, had done favors for the deceased. According to the Beckmanns, the decedent had a fall-

ing out or disagreement with his son, Dale. Decedent had indicated to them that he did not want Dale to inherit any of his property because of a refusal, on the part of Dale, to deed back to the decedent certain real estate he had obtained title to as surviving joint tenant under a conveyance to him and his mother, she having subsequently died. He indicated he wanted his property to go to another son and a granddaughter. Although requested by the decedent, defendants at first were hesitant about taking the decedent into their home to live because, according to Mrs. Beckmann, she would have to give up her employment at a nursing home in order to take care of him. However, after discussing the matter for some time, they decided they would do so, and informed the decedent of that fact. According to the Beckmanns, when they informed the decedent of their decision, he became overjoyed and at that time directed them to go to the bank and pick up the note which the Beckmanns had given him. On the basis of the letter signed by Fred Wallin, under date of February 27, 1976, which was prepared by an attorney at the request of Guenther Beckmann, the bank delivered the note to the Beckmanns; but it was later returned to the bank upon request.

In his reply to the answer of the defendants, the plaintiff denied the satisfaction of the note in question by the decedent; alleged that the decedent lacked the mental capacity to execute the alleged satisfaction; and alleged the purported satisfaction was obtained by undue influence exerted upon the decedent. In its judgment and decree, the court made no specific finding with reference to the mental capacity of the decedent at the time of his execution of the alleged satisfaction, but did specifically find that the evidence in the record clearly established that: (1) The decedent was subject to influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it;

and (4) that the result appears to be the effect of such influence. The court, in effect, found that the satisfaction referred to was the product of undue influence and was therefore void, and the court then proceeded to order foreclosure of the mortgage. We believe the questions of mental capacity and undue influence are related and must be discussed together, since the question of susceptibility to undue influence may well depend upon the mental capacity of the person subjected to the influence.

Although, technically, all the witnesses testifying were witnesses for the plaintiff because the defendants had rested at the end of plaintiff's testimony, the offered testimony with regard to the above issues varied considerably. Russel Morgan, the president of the First National Bank of Elwood where the decedent did part of his banking, testified that Fred Wallin was fairly sharp in financial affairs and was an aggressive businessman; that he maintained his place as well or better than anyone 91 years old and a widower living alone at home; and that the last time he saw Wallin before his death he was all right mentally. Marcia Morgan, who was the administrator of the West Side Care Home in Lexington, testified Wallin was admitted to that nursing home on February 17, 1976. He appeared antagonistic but was mentally alert and independent. She stated she had no independent opinion of Mr. Wallin's physical condition or mental capacity while he was in the home. Byron Owens, the president of the Home Bank in Elwood, stated that Wallin was a regular customer, and that in the late fall of 1975 Wallin was still alert, but toward the end of 1975 Wallin would come into the bank more frequently and sometimes forgot what he came for. Robert W. Tilden, the executor of the decedent's estate, was formerly in the banking business in Elwood and knew Wallin very well. He testified that Wallin's general physical condition slipped somewhat after his wife's death,

and that thereafter he thought Wallin slipped somewhat mentally and showed signs of forgetfulness. Tilden was appointed special guardian of Wallin on March 8, 1976, shortly before Wallin's death, and he testified that, in his opinion, Wallin was not competent to transact business when he took over as guardian. Dr. John Ford, who was Wallin's physician, testified that in February 1976 Wallin was lucid and able to understand when you spoke to him; although, if his business had a degree of complexity to it, he was better off if someone else was handling it. He stated that while Wallin had a certain degree of senility, he had given him no mental examination for judging his competency. In response to a question put to him during the trial as to whether one of the side effects of Wallin's vascular and heart problems would include any effect on his ability to think and his mental capacities, Dr. Ford replied: "Well, I think it would be safe to assume that these same processes that were affecting his legs and his heart were probably affecting his brain. We did note some increase in senility at the time of his admission insofar as there would be periods of confusion occasionally at night, although at times he was very clear and lucid. There would be occasions when he would not be as clear."

Ilse Beckmann also testified with reference to decedent's general physical condition, but expressed no opinion with reference to his mental competency. Guenther Beckmann testified that when he first visited Wallin in the nursing home, shortly before his death, Wallin was mentally alert and carried on an intelligent conversation.

Certain medical records of the decedent were also received in evidence. In one of the records of Mr. Wallin's hospitalization, under date of January 29, 1976, Dr. Ford notes: "The patient's inability to recall details in his life and particularly failure to remember some recent events, although the patient

would at times repeat himself, probably indicate some signs of some early organic brain syndrome." This record was made approximately 2 months prior to Wallin's death.

It is clear, from the above, that the testimony with reference to the mental competency of the decedent was conflicting. Defendants' next argument is that there is no evidence of undue influence. The record discloses, however, that Fred Wallin and defendant, Guenther Beckmann, had frequent contacts, mostly of a business nature, but to some extent social. Beckmann frequently took Wallin with him on trips to other cities for the sake of company and companionship. When the Beckmanns discovered that Wallin was in the West Side Care Home, Guenther Beckmann went to visit him. Beckmann purchased pajamas for Wallin. Wallin confided with the Beckmanns about his family problems with his son, Dale, and begged them to see that Dale did not receive any more of his property. He went so far as to give Beckmann a general power of attorney to handle his affairs. The evidence is undisputed that he desperately wanted to leave the West Side Care Home, and begged the Beckmanns to take him to their home.

There can be little question that the decedent was susceptible to undue influence because of his mental and physical infirmities. The medical records show that he was suffering from moderately severe congestive heart failure, slight emphysema, and other medical problems. While in the nursing home he apparently fell and fractured his hip, and was taken to the hospital where he was operated upon and died shortly thereafter. When Wallin was admitted to the hospital in May of 1974, his records for that admission show mental and physical infirmities. On January 29, 1976, he advised the doctor he was 84 years of age when his actual age was 91. On that date, he was diagnosed as having: (1) Congestive heart failure, (2) peripheral vascular disease,

(3) stasis ulcers on great toes bilateral, (4) bilateral inguinal hernias, (5) benign prostatic hypertrophy, and (7) early organic brain syndrome." On February 1, 1976, the medical records show, as an addition to the diagnosis, arteriosclerotic heart disease and chronic brain syndrome with mild senility.

Defendants argue that the executor failed to establish any of the four elements necessary to prove undue influence; specifically they contend there is no evidence in the record that Wallin was subject to influence, or that there was an opportunity to exercise such influence; that there is no evidence of a disposition by the Beckmanns to exercise such influence; and, further, that it does not appear the satisfaction and cancellation resulted from undue influence. The trial court found to the contrary after a hearing and after observing the witnesses testifying in the case; and we believe there is evidence in the record to support all of the elements. Because of the conflict in the testimony of the witnesses, we give strong weight to the rule that in determining the weight of the evidence, this court will consider that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. See, Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478 (1951); and Biggerstaff v. Ostrand, 199 Neb. 808, 261 N. W. 2d 750 (1978). We conclude that the judgment and decree of the trial court should be affirmed.

AFFIRMED.

KUNS, Retired District Judge, dissents.