JACOB J. RUTT, ALSO KNOWN AS J. J. RUTT, APPELLANT, V.
NADINE ROEENE FRANK, FORMERLY NADINE ROEENE RUTT,
ET AL., APPELLEES.

186 N. W. 2d 911

Filed May 14, 1971. No. 37775.

Russell & Colfer and Lyons, Wood & Carroll, for appellant.

Sarah Jane Cunningham, for appellees Frank.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an action in equity to reinstate a real estate mortgage which had been released by the plaintiff mortgagee, Jacob J. Rutt, prior to payment in full, and to foreclose the mortgage as reinstated or in the alternative to have judgment on the promissory note which the mortgage secured. The mortgagors and makers are the defendants Nadine Frank and Kenneth Rutt who, at the time of the making of the note and mortgage and the

giving and recording of the mortgage release, were husband and wife. Nadine filed an action for divorce against Kenneth on April 21, 1966, and they were thereafter divorced on August 8, 1966. Nadine remarried and is now the wife of the defendant Robert Frank. Jacob J. Rutt and Kenneth are father and son. Nadine became the owner of the property on which the mortgage had been given by virtue of the divorce settlement and later conveyed the same to herself and Robert as joint tenants. Jacob J. Rutt will hereafter be referred to as plaintiff. The others will be referred to by their Christian names. The term defendants when herein used will, unless the context otherwise indicates, refer to Nadine and Kenneth.

The trial court entered judgment denying reinstatement of the mortgage but giving the plaintiff the "election as to whether to proceed further in this action on the note, or file a new action." The plaintiff appealed, contending that the mortgage should have been reinstated, but if not that the trial court should be directed to enter judgment against Nadine and Kenneth on the note.

We affirm that portion of the judgment of the trial court denying reinstatement of the mortgage, reverse that portion of the judgment giving plaintiff election to proceed on the note or file a new action, and we remand the cause with directions to enter judgment on the note.

The evidence discloses that on October 14, 1953, the plaintiff loaned to Kenneth and Nadine the sum of $9,500 for which they gave a promissory note payable at $58 per month together with the mortgage in question which covered a duplex residential property which they owned in McCook, Nebraska. The mortgage was duly recorded and was second to a mortgage to a lending agency which will be referred to herein as the association. Payments were made by Nadine and Kenneth from their joint earnings and account upon the note and mortgage

on a more or less regular basis from 1953 to August 2, 1965. In 1963, Kenneth applied to the association to borrow additional money and at that time the plaintiff, at the request of Kenneth and to meet the requirements of the association on the new loan, executed and delivered on January 18, 1963, a release of the mortgage which was duly recorded.

Plaintiff in his amended petition alleges an oral agreement by Kenneth and Nadine to give a substitute mortgage after the association's new mortgage was recorded. The association made the new loan in the amount of $10,000 and its mortgage was recorded. No substitute mortgage was given by Kenneth and Nadine, nor was the plaintiff's original mortgage re-recorded. Plaintiff alleges that this was because of inadvertence and oversight by all the parties.

Plaintiff, in paragraph 6 of his amended petition, alleges: "It was not the intention of any of the parties herein that the plaintiff should release and relinquish his mortgage lien * * * without having the security of a mortgage lien for the amount due him." He alleges in paragraph 6 a failure of consideration by reason of the failure of the defendants to give a new mortgage and also alleges certain conclusions of law. The allegations of this paragraph were not traversed by the defendants Nadine and Robert. Kenneth filed no answer and was in default. He did testify at the trial on behalf of the plaintiff.

The balance owing on the note is denied on information and belief by the other defendants. The evidence is undisputed on the payments made and the trial court made detailed findings on this which are not challenged by the defendants. The note and mortgage show the method of payment. The balance owing can be determined merely by mathematical computation.

As to Kenneth the evidence is uncontradicted that he agreed to give a substitute mortgage. The evidence is in direct and irreconcilable conflict as to whether

Nadine made such a promise. The plaintiff testified positively that she did but the evidence does not show whether the alleged promise was made before the giving of the release or afterward. Nadine flatly and positively denied that she made such a promise. Kenneth testified he did not know whether or not she did. The evidence is clear that Nadine knew of the release and that its purpose was to make possible the borrowing of additional money from the association. She signed the necessary note and mortgage to the association.

The plaintiff pleaded in his petition that Nadine had become the owner of the property by virtue of the property settlement agreement which provided that Nadine would "assume and pay the balance due and owing on any incumbrances upon said property." This was admitted in the answer of Nadine and Robert and they specifically pleaded in their answer a part of the property settlement agreement as follows: "It is further agreed by and between the parties, that any and all business indebtedness resulting from the business known as Willow Lanes, McCook, Nebraska, or due and owing Jack Rutt shall be paid by the second party without any recourse to first party." The settlement agreement was admitted into evidence over objection.

The evidence discloses that the $10,000 loan from the association was used as follows: $4,000 was paid to Willow Lanes, Inc. (the bowling alley enterprise), as an investment in the business; and $4,947.87 of the proceeds went to the association to pay the balance on its previous mortgage. The use of the balance of the $10,000 is not disclosed by the evidence.

The plaintiff commenced this action on January 24, 1969. The evidence showed without contradiction that following the release of the mortgage the plaintiff never pressed Nadine and Kenneth for the substitute mortgage. He testified he made inquiry of Kenneth about it, and also he assumed it had been made and put in his safe by Kenneth before Kenneth left town. He testi-

fied to an understanding with Kenneth that after the substitute mortgage was recorded Kenneth would return "it to me (and) I was to give him the old mortgage." He knew at all times, however, that he still had the old mortgage and had never surrendered it. He knew of the divorce pending between Kenneth and Nadine and was aware that it had been granted but did not know the details of any settlement between them. The evidence does not show whether or not he knew that Nadine went into possession of and received the duplex property but the parties were living in the same town. He made no investigation to see if the substitute mortgage had been executed and recorded. In fact, he knew this mortgage had not been given. He made subsequent loans to his son without security. No payments on any of this indebtedness were made after August 2, 1965.

At the time of the divorce, Nadine accepted a quit claim deed from Kenneth to the property in consummation of the divorce settlement and this was at a time when only the association mortgage appeared of record. She checked the records at the time she recorded the deed. She testified that Kenneth never mentioned the other mortgage to her. She did, of course, know of the making of the mortgage and note as she signed them and she did know of the release by the plaintiff and that it was for the purpose of getting the additional loan from the association.

After Nadine's marriage to Robert, the property was placed in joint tenancy with him. They repainted one side of the duplex in order to rent it and replaced some light switches and some stair treads. The cost was about $400 to $500, although the evidence is vague on this. Robert did the work. Nadine and Robert received the rentals from the property and put these in their joint account together with the earnings from the property and from this paid the cost of repairs and the payments on the association mortgage and the insurance and taxes.

This case being in equity is for trial de novo in this

court. The trial court made detailed fact findings and stated its conclusions of law and it is apparent that it founded its decision denying reinstatement of the mortgage primarily on the basis of what it determined to be laches on the part of the plaintiff. We hold that under the particular circumstances of this case laches on the part of the plaintiff does exist and does bar whatever right he may originally have had to have the mortgage reinstated.

The defendants Nadine and Robert did not plead laches as such in their answer but merely pleaded the portion of the property settlement agreement we have previously mentioned. The evidence as we have noted does show: The unexplained failure of the plaintiff to earlier insist upon the replacement mortgage; the irreconcilable conflict in the evidence as to whether Nadine was a party to the promise to give a substitute mortgage or to an understanding that such a mortgage would be given; her acceptance as a part of the property settlement agreement of a quit claim deed to the property in question at a time when the plaintiff's mortgage stood released of record; and that the plaintiff's cause of action accrued not later than the date of the recording of the association's new mortgage which was about January 25, 1963. As previously noted plaintiff pleaded in his petition that through inadvertence and oversight of all of the parties a new mortgage was not given to the plaintiff.

Normally all of the facts constituting laches should be pleaded. However, when the admissible evidence together with the plaintiff's pleading shows laches, the court on its own motion may deny relief on this ground. Baxter v. National Mtg. Loan Co., 128 Neb. 537, 259 N. W. 630; 30A C. J. S., Equity, § 132, p. 99.

What constitutes laches is to be determined in the light of circumstances of the particular case. Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131. In this case the plaintiff's unexplained and unreasonable delay in asserting his rights; the effect of this delay on the proof

in connection with the alleged promise of Nadine to execute a new mortgage; and the acceptance by Nadine of property as part of the property settlement at a time when the plaintiff's mortgage stood released of record, all taken together constitute laches. See 30A C. J. S., Equity, §§ 115 to 117, pp. 37 to 65. If the proof of a promise by Nadine were clear and convincing the result might be different. This action is analogous to an action for specific performance of a contract to give a mortgage. In such case the proof should be clear and convincing. 81 C. J. S., Specific Performance, § 143, p. 727.

The plaintiff points out that the defendants have not denied the allegation of the petition that it was the intention of the parties (defendants Kenneth and Nadine) that a substitute mortgage be given. We accept as undisputed that Nadine knew the release was without consideration and its purpose was to give priority to the new loan by the association. We hold that even without a promise on Nadine's part, under the circumstances stated in this paragraph, when the purpose of the release was merely to give priority to another lien and not to satisfy the debt, the plaintiff would have been entitled to a reinstatement of his mortgage absent laches. 55 Am. Jur. 2d, Mortgages, § 506, p. 499.

The defendant Robert contends that he is an innocent party whose intervening rights would be affected by the reinstatement of the mortgage. This is founded upon his expenditures and labors previously mentioned. It appears that expenditures for repairs and maintenance as distinguished from improvments substantially increasing the value of the property made by a person who acquires the property without payment of other consideration and who is receiving the use of and income from the property do not give rise to equities which would prevent reinstatement of the mortgage. Robert is not an innocent purchaser as he did not acquire the property for a valuable consideration. Campbell v. Ohio

National Life Ins. Co., 161 Neb. 653, 74 N. W. 2d 546.

We next turn to consideration of plaintiff's prayer for alternative relief in the form of judgment against the defendants on the note.

The court in its findings of fact gives permission to the plaintiff under the provisions of section 25-2140, R. R. S. 1943, to proceed for recovery on the note, but as already noted, gave the plaintiff the election either to proceed in this action or to file a new action. This court has many times held that once a court of equity has acquired jurisdiction it may proceed to give full relief. Ready Sand & Gravel Co. v. Cornett, 184 Neb. 726, 171 N. W. 2d 775. The trial court therefore should proceed to determine the balance due on the note and enter judgment for the plaintiff against the makers for the amount due. The rights and liabilities of Nadine and Kenneth as between themselves by virtue of the property settlement agreement as it relates to the obligation to the plaintiff will, of course, have to be determined in another action.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.