HUGH CAMPBELL, APPELLANT, v. FRANCIS J. KIRBY ET AL., APPELLEES.

239 N. W. 2d 792

Filed March 18, 1976. No. 40246.

E. Dean Hascall of Hascall & Jungers and J. Patrick Green, for appellant.

Vincent J. Kirby of Kirby, Duggan & McConnell, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This action involves the question of a resulting trust, a constructive trust, and whether or not the rights of the plaintiff-appellant, Hugh Campbell, were barred by the statute of limitations. The trial court determined plaintiff's rights were barred by the statute of limitations and laches, and that plaintiff failed to prove a resulting trust. It reserved jurisdiction for the purpose of rendering a money judgment in favor of plaintiff and against defendants Francis J. Kirby and Phyllis R. Kirby in the sum of $23,087, and dismissed the action as to defendants Vincent J. Kirby and Bernadine Kirby, his wife. We reverse.

In 1967, Francis J. and Phyllis R. Kirby entered into a purchase agreement with Clifford W. and Lois F. Bergfield for the purchase of certain ranch property located in Dawes county, hereinafter described as the Bergfield ranch. Francis J. Kirby, hereinafter referred to as Frank, had paid $10,000 for an option on the property, and $10,000 in earnest money. The agreement required a further payment of $20,000 on or before November 1, 1967, and the assumption of an existing mortgage on the property. Frank, who lacked funds to pay the $20,000, arranged with plaintiff, Hugh Campbell, for the money. Frank was to write a check for $20,000 which would be honored by the Bank of Bellevue of

which Campbell was president. The consideration for the advance was an agreement to share the anticipated profit on a proposed resale of the ranch.

The Bergfields refused to accept Frank's check and attempted to rescind the purchase agreement. Litigation ensued between the Kirbys and the Bergfields. Campbell then agreed with Frank he would furnish a cashier's check for $20,000 which would be deposited with the clerk of the Dawes County District Court pending the litigation. The evidence would indicate this agreement was premised on the consideration that Campbell would receive a one-half interest in the ranch when title was conveyed. In addition to the $20,000, Campbell also deposited a cashier's check in the amount of $3,087 to cover additional expenses incurred in the transaction. The litigation was resolved by this court in Kirby v. Bergfield (1970), 186 Neb. 242, 182 N. W. 2d 205. The mandate issued January 14, 1971. This court affirmed a District Court judgment granting specific performance to the Kirbys. Title to the ranch was transferred from the Bergfields to the Kirbys in March 1971. Campbell's cashier check for $20,000 was deposited March 16, 1971, upon the closing of the transaction with the Bergfields.

During the pendency of the Bergfield litigation, on advice of counsel handling the litigation, no conveyance was made to Campbell. A blank deed signed by the Kirbys but never further executed was left with the attorney.

In April 1971, Frank took over the management of the ranch. Between April 16 and June 11, 1971, Campbell contributed an additional $2,950 at the request of Frank toward operating expenses. Frank concedes that after that date he never advised Campbell that further amounts were needed to preserve the security, or made any demand on him for additional funds. Campbell's testimony is that Frank told him he would be able to handle any further amounts needed from income. Frank received income from the sale of wheat, cash rent, and

from the government for certain conservation practices.

Prior to June 1, 1971, Vincent J. Kirby, Frank's brother, hereinafter called Vince, made certain advances to Frank in connection with an oil venture which proved unprofitable. At the demand of Vince, who was an attorney, Frank and his wife executed a purchase agreement to the ranch to Vince as security for advances made and to be made. Dated June 1, this agreement was not acknowledged until November 5, 1971. At the time of its delivery no present consideration passed from Vince to Frank.

Vince testified he was familiar with the original profit-sharing arrangement made between Frank and Campbell, but was never informed that Campbell was to receive a deed to one-half of the property. Frank, however, testified Vince was fully informed as to the transaction between him and Campbell, and agreed to make a settlement with Campbell. Campbell learned of the transfer of the property to Vince in January of 1972. He employed counsel in an attempt to force a settlement. The present action was filed on June 8, 1973.

We first consider the question as to whether the statute of limitations bars Campbell's claim. The plaintiff's petition prayed for specific performance of an oral contract to convey an interest in real estate, or, alternatively, damages for breach of contract and for an accounting. The case was ultimately tried on the theory of repudiation of a resulting trust. If a resulting trust existed, it could not have come into being until Frank Kirby, the trustee, had a trust res. Frank's interest was confirmed at least when the mandate issued from this court on January 14, 1971, in the Bergfield litigation. Previous to that time, Frank had no more than a purchase agreement. The deed to the property was not issued until March 1971, when the cashier checks deposited with the clerk of the District Court were cashed. This action was filed June 8, 1973, or approximately 2 years and 3 months after the cashier checks were cashed and

Frank actually received a deed to the property. June 8, 1973, was well within the permissible period for bringing this type of action. The District Court erred in holding the statute of limitations had run.

The District Court also held Campbell was guilty of laches. If applicable, the ancient maxim is: "Equity aids the vigilant, not those who slumber on their rights." This manner of stating the principle is somewhat misleading, since it disregards the element of the effect of the delay. Laches does not result from a mere lapse of time but from the fact that during the lapse of time changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is allowed to be enforced. Equitable conduct requires that a person should make timely assertion of his rights against another known to be acting in ignorance of his claim. Although ordinarily one has an undoubted right to bring an action within the statutory period, courts of equity have inherent power to refuse relief after undue and inexcusable delay independent of the statute when not to do so would work injustice in the particular case. Criswell v. Criswell (1917), 101 Neb. 349, 163 N. W. 302, L. R. A. 1917E 1103. What constitutes laches is to be determined in the light of the circumstances of the particular case. Rutt v. Frank (1971), 186 Neb. 842, 186 N. W. 2d 911.

While Campbell had not received a deed, he did understand that some type of deed was in the hands of the attorney who handled the Bergfield litigation. Although he delayed enforcing his right to the delivery of an instrument evidencing his interest in the land, we cannot say the delay was of such a nature as to constitute laches. Campbell did not learn of the transfer to Vince until 9 months after the transfer of the title to Frank. He immediately employed counsel to enforce his rights. The record would indicate that his attorney was in touch with both Frank and Vince thereafter. On the record, the defense of laches is not sustainable.

We do not feel the year and one-half which elapsed before action was finally brought is a sufficient delay to justify the dismissal of the action on the ground of laches.

The important question is whether or not Frank Kirby held an undivided one-half interest in the property as a resulting trustee for Hugh Campbell's benefit. We so find. From an analysis of the evidence and the attendant circumstances, we are convinced that a resulting trust was created. We said in Reetz v. Olson (1945), 146 Neb. 621, 20 N. W. 2d 687: " 'Although the term has been broadly defined as a trust which is raised or created by the act or construction of law, in its more restricted sense and contradistinguished from constructive trusts a resulting trust has been defined to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in deed or instrument of conveyance * * *. Such trusts are also called "presumptive" trusts, and are frequently defined in terms of or in connection with the character of the transaction out of which they most frequently arise, namely, where one person pays the consideration for a purchase and the title is taken in the name of another, * * *.' "

The type of trust involved in Reetz was a purchase money resulting trust. The presumption of a purchase money trust arises in favor of a person from whom the consideration comes for a conveyance of property to another. Since men in their affairs seldom give consideration to receive nothing, the intent to make a trust is presumed. This presumption is rebuttable by proof of a contrary intention of a person supplying the consideration. 76 Am. Jur. 2d, Trusts, § 206, p. 436.

In Woodward v. Woodward (1911), 89 Neb. 142, 131 N. W. 188, this court held: "Where, upon a purchase of real estate, the legal title is taken in the name of a woman, while the consideration or part of it is paid by

her (former) husband, but not by way of a gift or a loan to her, a resulting trust immediately arises from the transaction, unless it would be a fraud to enforce that trust, and the wife will hold the title in trust for her (former) husband to the extent that he paid the purchase price of the property."

The original agreement between Campbell and Frank involved what might be termed a quick sale transaction. The purchase agreement was already in the name of the Kirbys. Frank was buying the property with the expectation of making a quick sale and an immediate profit. His original agreement with Campbell for the payment of the $20,000 contemplated his taking title, making a quick sale, and dividing the profit between the two of them.

The important agreement herein, however, is not the original one but rather the subsequent agreement made when litigation and its attendant delay was inevitable. Frank admits: "Hugh Campbell * * * would receive 50 per cent of the interest in the ranch and option and that my wife and I would retain that amount." When the cashier's check was deposited with the clerk of the Dawes County District Court and the action for specific performance was filed, a new agreement was made whereby Campbell was to receive a deed to one-half the property. This revision of the agreement between the parties was a lawful one, since at any time before breach, the parties to an executory agreement may change its terms by subsequent agreement without a new consideration. See Selig v. Wunderlich Contracting Co. (1955), 160 Neb. 215, 69 N. W. 2d 861, in which we so held. However, Campbell additionally deposited another cashier's check for $3,087 to defray expenses incident to the delay and the litigation.

Holding the Frank Kirbys held an undivided one-half interest of the property as resulting trustees for Campbell's benefit does not determine the lawsuit. The effect of the transfer of the entire interest in the property

o

to Vince must now be examined. Restatement, Trusts 2d, § 408, p. 330, states: "If the trustee of a resulting trust in breach of trust transfers trust property to a bona fide purchaser, the transferee takes the property free of the resulting trust; but if the transferee is not a bona fide purchaser, he does not hold it free of the resulting trust."

Vince Kirby was not a bona fide purchaser. Vince was familiar with the transaction and the previous litigation. Frank testified he told Vince of his commitment to Campbell. He testified: "Well, I explained to Vince Kirby that Hugh Campbell had involved himself with me in the purchase of the ranch, and Vince Kirby advised me that he would * * * contact Hugh Campbell, and, well, square things away." Frank further testified that the reason for Campbell not having any previous evidence of ownership was due in part to the necessity of having only one owner shown during the District Court trial. He also testified no conveyance was made after the trial because they were not satisfied with the District Court's accounting procedures and their attorney advised another appeal to the Supreme Court and again advised him not to involve Campbell.

Frank Kirby testified he advised his brother Vince of his commitment to Mr. Campbell for a one-half interest in the ranch at the time of the transfer of his interest to Vince. Vince testified he never knew of Campbell's claim to a one-half interest in the title until after the transfer. Vince does admit that Frank told him about the advancement of the money, but he construed Frank's testimony to be only that Campbell was to have a one-half interest in the profit from a quick sale. It is difficult to understand how a quick sale could be made when the sale contract was in litigation. Frank's testimony was not that equivocal. While Vince denies Frank told him Campbell was to have a one-half interest in the ranch, he had sufficient information to put him on notice of Campbell's claim. The transfer to him was originally

made as a security interest to secure previous advancements on another transaction. On the record we find that Vince as a transferee was not a bona fide purchaser.

The imposition of a trust on a transferee fits in with the rationale of a constructive trust. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. Cardozo, J., in Beatty v. Guggenheim Exploration Co. (1919), 225 N. Y. 380, 122 N. E. 378. We hold Vince Kirby acquired the property under such circumstances that he may not in good conscience retain the beneficial interest covered by the resulting trust for Hugh Campbell.

Vince Kirby argues in order to establish a trust by parol evidence, the proof must be clear, unequivocal, and convincing. Holbein v. Holbein (1948)), 149 Neb. 281, 30 N. W. 2d 899. As suggested heretofore, the evidence is adequate to support a resulting trust in favor of Hugh Campbell. Vince Kirby, in taking a conveyance of the title when he is presumed to have knowledge of the equity of Hugh Campbell, holds title as a constructive trustee for Hugh Campbell to an undivided one-half interest in that property.

Bernadine Kirby is a party defendant in her capacity as the wife of Vince. She has no interest in this litigation beyond her inchoate interest as his spouse. The record does not indicate that she had any knowledge of or took any part in the transactions leading up to this litigation.

We reverse the judgment and remand the cause for a full accounting of the management of the ranch to the time of the hearing. We direct that Vince and Bernadine Kirby be required to convey an undivided one-half interest in the property to Hugh Campbell, subject to all encumbrances of record previous to June 1971. This conveyance shall also be subject to the requirement, if there are insufficient funds after a full accounting, that

Hugh Campbell pay one-half of the expenses necessarily incurred in the preservation of said property. All costs are taxed to the defendants Kirby.

REVERSED AND REMANDED.