ROYCE KOLLBAUM ET AL., APPELLANTS, V. K & K CHEVROLET, INC., A CORPORATION, ET AL., APPELLEES.
244 N. W. 2d 173

Filed July 21, 1976. No. 40409.

Norris G. Leamer, for appellants.

Smith, Smith & Boyd and Don A. Fitch, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

The appellants, minority shareholders in the defendant corporation, originally brought this action to dissolve K & K Chevrolet, Inc. (hereinafter referred to as K & K, Inc.), and liquidate its assets. The defendants, K & K, Inc., and Marvin M. Engel, the majority shareholder of K & K, Inc., cross-petitioned to have the appellants execute a deed to certain realty to K & K, Inc., before the corporation was dissolved. By agreement, the District Court first decided the defendants' cross-petition and determined that the real estate in question belonged to K & K, Inc. The appellants then dismissed their original petition. The defendants then amended their cross-petition and prayed for the dissolution of K & K, Inc. The District Court then entered an order dissolving K & K, Inc., and appointed a receiver to liquidate the assets of the corporation and distribute the net proceeds to the stockholders. The appellants challenge the District Court's order requiring the appellants to execute a deed of the realty to the defendants and also the order of the District Court dissolving the corporation. We affirm the judgment of the District Court.

Royce Kollbaum, one of the plaintiffs, and Wilfred

J. Kamrath were employees of Verzani Chevrolet Company of Ponca, Nebraska. The owner of Verzani Chevrolet Company died on July 30, 1970, and on June 24, 1971, Kollbaum and Kamrath entered into a contract with Verzani's heirs to purchase the business, including the real estate, fixtures, and equipment of the business. However, Kollbaum and Kamrath did not have the money to complete the contract, so they sought help from the defendant, Engel. Engel agreed to provide the money needed to complete the contract, approximately $18,100, but in consideration for the money, the business was incorporated and Engel was given 55 percent of the stock. Kamrath owned 25 percent of the stock, and Kollbaum owned the remaining 20 percent of the stock. A stockholders' agreement was signed and Kollbaum and Kamrath were given the option to buy out Engel's shares after a 5-year period had expired. The agreement provided that when the option was exercised, Engel was entitled to $18,100, plus 55 percent of the net profits, plus 9 percent per annum interest on his $18,100 investment.

The new business obtained a Chevrolet franchise in August 1971 with Kamrath as the franchise dealer. All bills were paid by K & K, Inc., including the payments on the purchase contract with the Verzani heirs. On January 20, 1973, Wilfred Kamrath died. Elmer Kamrath, the administrator of his estate, is a plaintiff in this case along with Kollbaum.

Since Wilfred Kamrath had been the franchise dealer, it was necessary to pick a new dealer to represent K & K, Inc., with the Chevrolet corporation. Kollbaum desired to be the new dealer, but Engel felt that Chevrolet would not accept him, and therefore Engel suggested a William Wente be allowed to buy Kamrath's stock and then be appointed dealer. Kollbaum and Engel could not agree on a dealer, and subsequently K & K, Inc., lost its Chevrolet franchise. Hard feelings developed between Engel and Kollbaum. Kollbaum opened up his own repair shop on part of K & K, Inc., property

and Wente operated a new Chevrolet franchise out of the remainder of K & K, Inc., property which he leased from K & K, Inc.

Kollbaum and the administrator of Kamrath's estate brought this action to dissolve K & K, Inc., on the theory that the real estate which K & K, Inc., had used was the appellants, since they had the legal title to it. When the District Court held that the land was owned by K & K, Inc., the appellants did not desire to dissolve the corporation, but rather attempted to enforce their option to buy out Engel. However, the District Court ordered that K & K, Inc., be dissolved and appointed a receiver to distribute the proceeds from the sale of the assets.

The appellants' first contention is that the District Court was in error in finding on the cross-petition that a resulting trust was created in the real estate and that, therefore, K & K, Inc., should be declared the owner of said real estate. The appellants insist that the legal title was in the appellants and that the statute of frauds requires a transfer of title to real estate (section 36-103, R. R. S. 1943), and can only be accomplished by a written instrument signed and acknowledged by the grantor. It is settled law that where the evidence is clear and convincing that a resulting trust has been established, the statute of frauds is not applicable. The District Court found that a resulting trust had been established by virtue of the agreement between the parties and the circumstances surrounding the performance of the agreement, and decreed title in K & K, Inc. From an analysis of the agreement, the evidence, and the attending circumstances, we are convinced, as was the District Court, that a resulting trust was created.

We stated in the very recent case of Campbell v. Kirby, 195 Neb. 610, 239 N. W. 2d 792, as follows: "We said in Reetz v. Olson (1945), 146 Neb. 621, 20 N. W. 2d 687: 'Although the term has been broadly defined as a trust which is raised or created by the act or con-

struction of law, in its more restricted sense and contradistinguished from constructive trusts a resulting trust has been defined to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in deed or instrument of conveyance * * *. Such trusts are also called "presumptive" trusts, and are frequently defined in terms of or in connection with the character of the transaction out of which they most frequently arise, namely, *where one person pays the consideration for a purchase and the title is taken in the name of another,* * * *.' " (Emphasis supplied.)

The pertinent facts and the inferences to be drawn therefrom are undisputed. The stockholders' agreement of July 23, 1971, provided for the formation of a corporation and clearly contemplated that the property and the business of operating the Chevrolet franchise was to be conducted in a corporate form. The basic scheme or pattern of operation was reaffirmed, when subsequently a new page two of the stockholders' agreement was prepared and executed in order to satisfy the requirements of the Chevrolet motor company as to the extension of time for the option agreement. Immediately following the execution of this agreement, the business commenced operation under the new management about August 1, 1971. The actions, the conduct, and the performance under this agreement demonstrate conclusively that it was the intention that the new K & K, Inc., should be the owner of the assets of the corporation, including the title to the land. K & K, Inc., made the payments under the contract which conveyed the real estate to the appellants. K & K, Inc., paid the taxes on the property. K & K, Inc., never paid rent on the property, but carried the property as an asset on its books. The operations of K & K, Inc., and the execution of these acts and the bookkeeping involved was under the control of the appellants. Their own

actions indicate clearly their intentions that the owner-
ship of the real estate should be in the corporation.
The appellants did not show the land as an asset on
their personal tax returns. Although not officially in-
corporated until January 1972, all business was carried
on under the name of K & K Chevrolet, Inc. The late
incorporation has no significance so far as the parties
are concerned. Putting all these facts together, we feel
that the evidence is clearly convincing, as the District
Court did, that it was the intent of the parties that
K & K, Inc., provide the consideration for the purchase
of the land; that K & K, Inc., actually did furnish the
consideration for the land; and it was their continued
intention to treat the land as though K & K, Inc., was
the owner. The consideration for the purchase was
paid by K & K, Inc., and the intention of the parties and
the performance of their agreement leave no other con-
clusion but that the ownership of the land should be
vested in the corporation which was formed for the
very purpose of acquiring and operating the assets neces-
sary to acquire the franchise of the Chevrolet motor
company. Under these circumstances, equity will not
permit the appellants to assert independent ownership
of their naked record title. The District Court was cor-
rect in declaring a resulting trust and holding that
K & K, Inc., was the owner of the real estate involved.

The record reveals that the basic issue upon which this
case was tried to the District Court was the ownership
of the real estate involved. What we have said disposes
of that issue. Nevertheless, on oral argument and in the
conclusion of their brief, the appellants request the court
to enforce the stock option agreement and permit the
appellants to buy out Engel's stock for $18,100. This is
based on the provision in the shareholders' agreement
that the minority stockholders, after a 5-year period has
expired, have the right to buy out Engel's stock. This
option agreement does not expire until July 23, 1976, and
so is premature. We observe that the appellants have

assigned no error in the decision of the District Court dissolving the corporation. The only assignments of error made in this case are the general ones that the decision of the court is not sustained by the evidence; that it is contrary to law; and that there were errors of law occurring at the trial. The validity of the court's action in dissolving the corporation is not specifically attacked in argument or in any proposition of law upon which they rely. The brief reveals that the whole real issue in this case is the title to the real estate. The appellants themselves originally pleaded for dissolution of the corporation, then withdrew it, and stipulated that the issue of the ownership of the real estate should be the real issue to be tried first by the court. It is doubtful that the issue of the dissolution of the corporation is properly presented under the assignments of error, and the argument in the brief. Be that as it may, shortly before this case was tried, the court gave the appellants an opportunity to file an amended answer to the defendant's cross-petition herein. In this amended answer to the defendants' cross-petition the appellants herein prayed as follows: "3. That the appointment of a Receiver be denied *or in the alternative* that should the Court determine that Plaintiffs are not entitled to exercise the stock option to purchase the shares of Marvin M. Engel, that a Receiver then be appointed *to liquidate said corporation after a full and complete accounting of all the assets* due to the corporation; * * *." (Emphasis supplied.) Thus, by the terms of their own amended cross-petition and prayer, the appellants presented to the court an alternative disposition for the case, and the court followed it by dissolving the corporation and ordering an accounting between the parties. It is settled law that the parties are bound by the theory upon which the case was tried from the pleadings. We come to the conclusion that the trial court's action in dissolving the corporation, under all the circumstances, was proper, especially considering the appellants' original contention

that the corporation should be dissolved and then the renewal of that position by requesting alternative relief in their final amended answer.

Although not briefed by the parties, the action of the court in dissolving the corporation was amply justified under the statute. Section 21-2096, R. R. S. 1943, provides that the District Court has the power to dissolve any corporation when, in an action brought by a shareholder, it is established that "the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered * * *." The meaning of the term "deadlocked" within the context of this statute is a corporation which, because of decision or indecision of the stockholders, cannot perform its corporate powers. Murray-Baumgartner Surgical Instrument Co. v. Requardt, 180 Md. 245, 23 A. 2d 697; RKO Theatres, Inc. v. Trenton-New Brunswick Theatres Co., 9 N. J. Super. 401, 74 A. 2d 914. We come to the same conclusion that the trial court did in examining the undisputed facts in this case. Management and the majority stockholder were hampered in the effective operation of the business as evidenced by the failure on the part of the appellants to agree on an arrangement to save the Chevrolet franchise. The appellants would not agree to the Wente lease which ultimately fell in the decision of the District Court. Appellant Kollbaum even moved into the rear portion of the building premises and operated separately and distinctly from the corporation. The Board of Directors is likewise split, with Engel and Wente voting one way and Kollbaum voting the other way. It is undisputed that hard feelings exist between the shareholders and this litigation demonstrates that the corporation can no longer function in a viable fashion. It, therefore, appears that the District Court's determination to dissolve the corporation, to have a full accounting between the parties, and determine the title of the real estate

was correct and followed precisely the very purpose of the dissolution statute, section 21-2096, R. R. S. 1943.

The decision of the District Court is correct and is affirmed.

AFFIRMED.

NEWTON, J., not participating.
BOSLAUGH, J., concurs in result.