SUPERIOR HYBRIDS COMPANY, INC., APPELLEE, V. ROBERT R. CARMICHAEL, APPELLANT, AND DORSEL J. CARMICHAEL, APPELLEE.

333 N.W.2d 911

Filed May 20, 1983. No. 82-229.

Peter L. Harlan of Schrempp and Lefler, for appellant.

Leo A. Knowles and Michael Higgins of McGrath, North, O'Malley & Kratz, P.C., for appellee Superior.

BOSLAUGH, WHITE, and CAPORALE, JJ., and BURKHARD and FINN, D. JJ.

BURKHARD, D.J.

The defendant-appellant, Robert R. Carmichael, hereinafter called Carmichael, appeals from the judgment of the District Court of Dodge County, Nebraska, finding that a resulting trust in favor of the plaintiff should be impressed on the real estate in question and directing the defendants to execute a quitclaim deed within 30 days of the order conveying to plaintiff all of their right, title, and interest in said real estate. Defendant Dorsel J. Carmichael, former wife of Carmichael and hereinafter referred to as Dorsel, has not appealed. The plaintiff, Superior Hybrids Company, Inc., is referred to herein as Superior.

Carmichael, in his sole assignment of error, states that the court erred in declaring a resulting trust over the real estate in question for the benefit of the plaintiff corporation and directing the defendants to convey all of their right, title, and interest in said real estate to the plaintiff. We affirm.

The business of Superior is the retail sale of seed corn and other grains. It was originally organized as an individual proprietorship by Carmichael in 1974 during the course of his marriage to Dorsel. Superior was incorporated in June 1976, and it issued 300 shares of stock equally among Carmichael; Dorsel; Timothy Chapman, son of Dorsel and hereinafter called Chapman; and Revel Chapman, wife of Timothy. The officers were Carmichael, president; Chapman, vice president; and Dorsel, secretary-treasurer.

Superior began its operation from the residence of the Carmichaels in North Bend, Nebraska, but eventually moved to commercial space. In 1978 a flood occurred, causing extensive damage and destroying approximately $50,000 worth of Superior's seed. As a result of the flood, it was necessary for

Superior to obtain a loan of $100,000 from the Small Business Administration (SBA). A note for $75,000 was given by Superior to the SBA on August 3, 1978. The note was signed by Carmichael as president and by Dorsel as secretary. SBA released the funds to Superior to repair or replace real property, to purchase a tract of land, to construct a building, and to pay on an existing business loan with First State Bank of Fremont. The $75,000 loan was used to acquire real estate and to make improvements thereon. The real estate was purchased on a land contract in the individual names of Carmichael and Dorsel. The mortgage given to SBA was to secure the payment of the $75,000 promissory note "signed by Robert R. Carmichael & Dorsel Jane Carmichael in behalf of Superior Hybrids Company Inc." Carmichael and Dorsel also executed a real estate mortgage to SBA to secure the payment of a promissory note in the amount of $25,000 "signed by Robert R. Carmichael and Dorsel J. Carmichael in behalf of Superior Hybrids Company Inc."

All costs in connection with the real estate were paid by Superior. These included payments on the land contract, the SBA loan, real estate taxes, improvements, maintenance, repairs, operating expenses, and utilities. Carmichael did not personally contribute money toward any of these expenses. It is also true that Superior paid numerous personal expenses of Carmichael, Dorsel, Chapman, and Chapman's wife. The real estate was carried on Superior's corporate records and was reported in Superior's annual tax return. Carmichael did not list the real estate on his 1980 tax return and was unable to recall whether or not it appeared on his 1979 return.

On June 30, 1981, the District Court of Dodge County, Nebraska, entered a decree of dissolution of marriage between Dorsel and Carmichael. The decree provided, among other things, for the sale of the real estate in question, with the proceeds to be

divided equally between Dorsel and Carmichael. Dorsel appealed that decision. Subsequently, the present action was instituted by Superior seeking to impose a resulting trust upon the real estate in question.

The court will impose a resulting trust when the circumstances surrounding a conveyance make it clear that the parties intended such a result. " '[A] resulting trust has been defined to be one raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in deed or instrument of conveyance.' " *Biggerstaff v. Ostrand*, 199 Neb. 808, 816, 261 N.W.2d 750, 754 (1978). "With respect to the underlying issues involving a resulting trust, the rules in this state have been well established. Where a transfer of property is made to one person and the whole or a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made . . . ." *Jirka v. Prior*, 196 Neb. 416, 423, 243 N.W.2d 754, 759 (1976). The rationale for this rule is that individuals seldom give consideration to receive nothing. *Campbell v. Kirby*, 195 Neb. 610, 239 N.W.2d 792 (1976).

*Kollbaum v. K & K Chevrolet, Inc.*, 196 Neb. 555, 244 N.W.2d 173 (1976), involved a dispute between two minority shareholders and the majority shareholder of K & K Chevrolet, Inc. The premises from which the Chevrolet dealership operated was titled in the names of the two minority shareholders, yet consideration for the real estate had been provided by the corporation. The court also found that K & K paid the taxes on the property, paid no rent on the property, and carried the property as an asset on its books. Additionally, the court noted that the minority shareholders did not list the property as a personal asset on their personal tax returns. The court concluded, in putting all these facts together, that "the evidence is clearly convincing . . . that it

was the intent of the parties that K & K, Inc., provide the consideration for the purchase of the land; that K & K, Inc., actually did furnish the consideration for the land; and it was their continued intention to treat the land as though K & K, Inc., was the owner. The consideration for the purchase was paid by K & K, Inc., and the intention of the parties and the performance of their agreement leave no other conclusion but that the ownership of the land should be vested in the corporation . . . . Under these circumstances, equity will not permit the appellants to assert independent ownership of their naked record title. The District Court was correct in declaring a resulting trust and holding that K & K, Inc., was the owner of the real estate involved." *Id.* at 560, 244 N.W.2d at 176.

It is true, as argued by Carmichael's counsel, that the present case involves a family corporation, whereas *Kollbaum* did not. This is a factor, but not a controlling factor. The present case fits squarely within the *Kollbaum* holding. Superior made the loan payments and the land contract payments; paid the real estate taxes and general operating and maintenance expenses; carried the property on its books as an asset; and reported it on its corporate tax returns. We conclude that a resulting trust existed and that plaintiff is the owner of the real estate involved.

Carmichael contends that the presumption of a resulting trust in favor of the person who provides the consideration is rebuttable by proof of a contrary intention on the part of such person, which, in this case, is Superior. *Campbell v. Kirby, supra.* Carmichael reasons that since he was the president of Superior when the real estate conveyance took place and was instrumental in locating the real estate, obtaining the financing, and negotiating the sale, he

was in the best position to articulate the corporate intent of Superior. He testified that the purpose in having the land titled in his name and Dorsel's name was because he wanted personal control of the property, and in case of his death Dorsel would have control of the property; and that it was his intention that Superior would not have legal title to the land but that it would make the mortgage payments to SBA. Carmichael said Dorsel and Chapman were aware of this "situation."

The fact is that there is no contrary intention on the part of Superior, the "person" supplying the consideration. All of its actions, as previously enumerated, manifest a clear intention that a resulting trust should arise. In addition, there are no corporate records to reflect an intent by Superior that the property be other than a corporate asset. Carmichael's argument in this regard is without merit.

Carmichael also contends that a resulting trust does not arise in this case because the parties are sufficiently close so as to give rise to the presumption that a gift was intended. *Olsen v. Best*, 167 Neb. 198, 92 N.W.2d 531 (1958). The evidence in this case, even though a family-held corporation is involved, indicates no gift was intended, and the presumption has been rebutted. All indicia of ownership rest with Superior. " '[T]he fact that the payor manages the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, and the acquiescence by the transferee in such assertion of ownership, is evidence to rebut the inference of an intention by the payor to make a gift to the transferee.' " *Zundel v. Zundel*, 278 N.W.2d 123, 129 (N.D. 1979).

The burden is upon the one claiming the existence of a resulting trust to establish the facts upon which it is based by clear and satisfactory evidence. *Biggerstaff v. Ostrand*, 199 Neb. 808, 261 N.W.2d 750 (1978). This Superior has done.

The judgment of the District Court is therefore affirmed.

AFFIRMED.